# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

In re

EDMUNDO JIMENEZ & WANDA SOLER

Debtors

CASE NO. 10-02205 SEK

Chapter 11

## DISCLOSURE STATEMENT
**B25B (Official Form 25B) (12/08)**

DATED:  June 30, 2010

EDGARDO MUÑOZ, PSC
*counsel for debtor-in-possession*
PO Box 360971
San Juan, PR 00936-0971
Tel. (787) 524-3888
Fax (787) 524-3888

**EDGARDO MUÑOZ**
USDC NO. 125713
emunoz@emunoz.net

EDM-DS.wpd

**DISCLOSURE STATEMENT** *Page 2*
*CASE NO. 10-02205 sek*

# *Table of Contents*

I.      **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        **A. Purpose of This Document** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        **B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing** . . . . . 4
                1.      *Time and Place of the Hearing to Finally Approve This Disclosure*
                        *Statement  and Confirm the Plan* . . . . . . . . . . . . . . . . . . . . . . . . . 4
                2.      *Deadline For Voting to Accept or Reject the Plan* . . . . . . . . . . . . . . . 5
                3.      *Deadline For Objecting to the Adequacy of Disclosure and Confirmation*
                        *of  the Plan* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
                4.      *Identity of Person to Contact for More Information* . . . . . . . . . . . . . . 5

II.     **BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        A.      **Description and History of the Debtor=s Business** . . . . . . . . . . . . . . . . . 6
        B.      **Insiders of the Debtor** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        C.      **Management of the Debtor Before and During the Bankruptcy** . . . . . . . . . 7
        D.      **Events Leading to Chapter 11 Filing** . . . . . . . . . . . . . . . . . . . . . . . . . 7
        F.      **Projected Recovery of Avoidable Transfers** . . . . . . . . . . . . . . . . . . . . . 8
        G.      **Claims Objections** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        H.      Current and Historical Financial Conditions . . . . . . . . . . . . . . . . . . . . . . . 8

III.    **SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF**
        **CLAIMS AND EQUITY INTERESTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        A.      **What is the Purpose of the Plan of Reorganization?** . . . . . . . . . . . . . . . . 9
        B.      **Unclassified Claims** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
                1. *Administrative Expenses* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
                2. *Priority Tax Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        C.      Classes of Claims and Equity Interests . . . . . . . . . . . . . . . . . . . . . . . . . . 10
                1. *Classes of Secured Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
                2. *Classes of Priority Unsecured Claims* . . . . . . . . . . . . . . . . . . . . . . . . 12
                3. *Classes of General Unsecured Claims* . . . . . . . . . . . . . . . . . . . . . . . . 12
                4. *Classes of Equity Interest Holders* . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        D.      **Means of Implementing the Plan** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
                1.      *Source of Payments* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
                2.      *Post-confirmation Management* . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        E.      **Risk Factors** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        F.      **Executory Contracts and Unexpired Leases** . . . . . . . . . . . . . . . . . . . . 15
        G.      **Tax Consequences of Plan** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

IV.     **CONFIRMATION REQUIREMENTS AND PROCEDURES** . . . . . . . . . . . . . . . 16
        A.      **Who May Vote or Object** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
                1.      *What Is an Allowed Claim or an Allowed Equity Interest* . . . . . . . . . . . 17
                2.      *What Is an Impaired Claim or Impaired Equity Interest?* . . . . . . . . . . . 17

**DISCLOSURE STATEMENT**                                                                 *Page 3*
*CASE NO. 10-02205 sek*

|   |   | 3. | *Who is **Not** Entitled to Vote* | 17 |
|   |   | 4. | *Who Can Vote in More Than One Class* | 18 |
|   | B. | **Votes Necessary to Confirm the Plan** | | 18 |
|   |   | 1. | *Votes Necessary for a Class to Accept the Plan* | 18 |
|   |   | 2. | *Treatment of Non-accepting Classes* | 18 |
|   | C. | **Liquidation Analysis** | | 18 |
|   | D. | **Feasibility** | | 19 |
| V. |   | **EFFECT OF CONFIRMATION OF PLAN** | | 19 |
|   | A. | **DISCHARGE OF DEBTOR** | | 19 |
|   | B. | **Modification of Plan** | | 20 |
|   | C. | **Final Decree** | | 20 |

B25B (Official Form 25B) (12/08) – Cont.                                                                                                    4

## I.     INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") in the small business chapter 11  case of the above captioned debtors EDMUNDO JIMENEZ & WANDA SOLER (collectively referred to as the "Debtor").  This Disclosure Statement contains information about the  Debtor and describes the PLAN OF REORGANIZATION (the "Plan") filed by  the Debtor  on this date.    A full copy of the Plan is attached to this Disclosure Statement as Exhibit A.  *Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.*

The Plan provides for payment of 100% of all allowed claims.  Said proposed distributions under the Plan are discussed at pages 12-14  of this Disclosure  Statement.

General unsecured creditors are classified in Class 3

### A.  Purpose of This Document

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,

- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what  you will receive on your claim or equity interest if the plan is confirmed),

- Who can vote on or object to the Plan,

- What factors the Bankruptcy Court (the "Court") will consider when deciding whether  to confirm the Plan,

- Why the Debtor believes the  Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or  equity interest in liquidation, and

- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement.  This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

### B.  Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement.  This section  describes the procedures pursuant to which the Plan will or will not be confirmed.

1. *Time and Place of the Hearing to Finally Approve This Disclosure Statement  and Confirm the Plan*

**B25B (Official Form 25B) (12/08) – Cont.**                                                              5

The hearing at which the Court will determine whether to finally approve this Disclosure Statement and confirm the Plan will take place on _____ [insert date to be supplied]__, at _____[insert time], at the United States Bankruptcy Court, U.S. Post office and Courthouse Building, Second floor, Courtroom 1, 300 Recinto Sur Street, Old San Juan, Puerto Rico 00901.

2.      *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot to:

EDGARDO MUÑOZ, PSC
PO Box 360971
San Juan, PR 00936-0971

emunoz@emunoz.net

See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by _____ [insert date] or it will not be counted.

3.      *Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon debtor's attorney at EDGARDO MUÑOZ, PSC , PO Box 360971, San Juan, PR 00936-0971, emunoz@emunoz.net;  and the US Trustee's Office by _____ [insert date].

4.      *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you may contact EDGARDO MUÑOZ, PSC , PO Box 360971, San Juan, PR 00936-0971, emunoz@emunoz.net; .

C.     **Disclaimer**

***The Court has conditionally approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms.  The Court has not yet determined whether the Plan meets the legal requirements for confirmation,  and the fact that the Court has approved this Disclosure Statement does not constitute an  endorsement of the Plan by the Court, or a recommendation that it be accepted. The Court's  approval of this Disclosure Statement is subject to final approval at the hearing on confirmation of  the Plan.  Objections to the adequacy of this Disclosure Statement may be filed until [_____.]***

B25B (Official Form 25B) (12/08) – Cont.                                                    6

## II.     BACKGROUND

### A.     Description and History of the Debtor's Business

In Business for Team Development Inc. is a family corporation created by Debtor. It was incorporated as a for-profit private corporation in March 12, 2001, under the laws of the Commonwealth of Puerto Rico. Founded by Dr. Edmundo Jiménez, Ph.D., with 100 percent stock ownership, In Business provided business consulting and training services since it first started its operation in January 2002. Its first office was physically located in San Juan, PR, in a leased location; later on, in 2005, In Business acquired real estate in Guaynabo, PR, where it moved and from where it conducted all office-related affairs until June 2009. In the midst of this same period, In Business acquired a piece of land in Gurabo, PR, in 2007, and began investing resources aimed at developing a training center referred to as Hacienda Los Milagros. At this point, it is worth mentioning that the vast majority of services offered by In Business and its associates throughout the years was performed at each customer's chosen site, be it the customer's place of business or at other locations selected by the customer.

Previous to initiating operations for In Business in 2002, Dr. Edmundo Jiménez conducted business consulting and training work as an independent consultant from 2000 to 2001. Now, due to current economic hardship, In Business was forced to cease its business operations in June 2009.

The types of services previously offered by In Business and by Dr. Edmundo Jimenez are now being offered by Debtor. The field of organizational development, business consulting and training, have grown in popularity in recent years due to a continued trend toward reorganizing business and outsourcing soft-skills training services, motivational and educational lectures, team-building initiatives and other tailored-made solutions for businesses.

As discussed in its Disclosure Statement, said corporation, In Business For Team Development, Inc. will receive income from rent, and from the repayment of a debt of its principal shareholders, debtors herein. The corporation filed a Chapter 11 case which is being handled together with this case. (Case No 10-2207 SEK) More details on said reorganization are provided in the Disclosure Statement filed by said related debtor, which is included herewith as **Exhibit H**

### B.     Insiders of the Debtor

Debtor's insiders as defined in §101(31) of the United States Bankruptcy Code (the "Code") and their relationship to the Debtor would include debtors' son, and the corporate entity in the related case  (Case No 10-2207 SEK). Debtors live with their son, and have paid their household expenses from the operation of the business. Said personal expenses have fluctuated between $4,000 and $5,000. The Plan contemplates a $4,000 allowance throughout its life. The corporation receives rent from Debtor for the use of the farm. The Plan provides for a repayment of the related-party obligation created by advances made by the corporation throughout the years. Both payments constitute the funding of the Chapter 11 plan of related  Case No 10-2207 SEK, in which corporate debts (for which the above captioned debtors are jointly liable) are being repaid. See **Exhibit H** for

B25B (Official Form 25B) (12/08) – Cont**.**                                                           7

details.

### C.        Management of the Debtor Before and During the Bankruptcy

During the two years prior to the date on which the bankruptcy petition was filed, the above captioned debtors have been the officers,  directors, managers or persons in control of the Debtor, and have managed its business.  After the effective date of the order confirming the Plan, the affairs of the Debtor will continue to be handled by them.

### D.        Events Leading to Chapter 11 Filing

At the time when the Chapter 11 was filed on March 23, 2010, the Debtors' estate was severely burdened by debts, primarily the Bank's, but also unsecured and priority debt.  The operation of the business had cash flows problems created by the attachment by Banco Popular of the personal and corporate bank accounts, and also, because of reduced income due to the fact that Autoridad de Acueductos y Alcantarillados have not renewed the contract which was debtor's principal source of business.[1]  The farm's mortgage was also being foreclosed by Banco Popular.

### E.        Significant Events During the Bankruptcy Case

•        There have been no sales outside the ordinary course of business, debtor in possession financing, or cash collateral orders.

•        Professionals approved by the court:

•        Attorney for Debtor:   Edgardo Muñoz, PSC (Dkts. 8,31,44)

•        Accountants for Debtor: JM Consulting Services (Dkts. 9,40,43)

•        Adversary proceedings that have been filed or other significant litigation that  has occurred:

•        A prepetition attachment by Banco Popular of $17,000 in bank deposits is voidable under sec. 547 as a preferential transfer.  Debtor has been negotiating with the creditor for the return of the funds without the need of filing a an adversary action under Rule 7001.  The bank has responded positively.  If no extrajudicial recovery is achieved, Debtor will file the corresponding adversary action.

•        Steps taken to improve operations and profitability of the Debtor:

•        Mr. Edmundo Jimenez will continue doing business as In Business For Team Development, and the plan will be funded from income received from contracts with

---

[1]  Debtor has been able to obtain a new contract with AAA, and has also been able to diversify its sources of income with contracts with private parties.

government agencies, banking industry and private sector.

- Additional plan funding is projected from the income to be received from Equine Learning Assisted trains offered on Finca Los Milagros Premises at Gurabo, PR  The menu of options offered to customers will range from educational and motivational lectures/conferences by Dr. Edmundo Jimenez, to Strategic Planning consulting, soft-skills training in different topics (examples: effective meetings, teamwork, problem-solving, leadership, decision-making, conflict management, etc.), team building services and Equine-Assisted Activities at Hacienda Los Milagros.  Prices for these services range from $75 to $150, per hour for consulting services, and from $800 to $1,500 for 90 minute lectures by Dr. Edmundo Jiménez; and from $2,000 to $3,000 a day for Equine-Assisted Learning team experiences for 20 people or less.  This is consistent with the competition in the professional field of business consulting and training, with the exception of Equine-Assisted Learning which has no competition currently in Puerto Rico.

- An advertising and promotion initiative in currently underway with the purpose of positioning Dr. Edmundo Jimenez and Hacienda Los Milagros as "a unique and exclusive opportunity" for organizations and individuals to experience and benefit from Equine-Assisted Activities.

### F.     Projected Recovery of Avoidable Transfers

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions. The preferential transfer mentioned above is being negotiated, and the plan provides for dividends of 100% of all claims, without the need of further recoveries.

### G.     Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the  Debtor reserves the right to object to claims.  Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.  The procedures for resolving disputed claims are set forth in Article V of the Plan. (See Exhibit A)

### H.  Current and Historical Financial Conditions

The identity and fair market value of the estate's assets are listed in **Exhibit B**. The source and basis of valuation are debtors' opinions, and good faith estimates.

The Debtor's most recent financial statements  are set forth in **Exhibit C**.

The most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case are set forth in **Exhibit D**.  A summary of the Debtor's periodic operating reports filed since the commencement of the Debtor's bankruptcy case is set forth in **Exhibit D-1**

**B25B (Official Form 25B) (12/08) – Cont.**                                           9

III.    **SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

A.    **What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

B.    **Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

1.    *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

**Exhibit F** lists the Debtor's estimated administrative expenses.

- The proposed treatment under the Plan is that these claims will be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

- Professional Fees, as approved by the Court, will be paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan

2.    *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by §507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

**Exhibit G** lists the Debtor's estimated § 507(a)(8) priority tax claims. The proposed treatment under the Plan pays these claims with 10% interest in 36 equal monthly installments.

B25B (Official Form 25B) (12/08) – Cont.                                                      10

### C.  Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will  receive under the Plan:

   1.  *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or  that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.  If the value  of the collateral or setoffs securing the creditor's claim is less than the amount  of the creditor's   allowed claim, the deficiency is classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and their  proposed treatment under the Plan:

|  | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| **Class 2A** | *Secured claim of*: DORAL MORTGAGE<br><br>Collateral description =<br><br>Debtors' residence in Caguas<br><br>  Allowed Secured Amount = $224,588.49 (PoC 7) | NO | unimpaired | Monthly Pmt   = $1,713.32<br><br>Will be kept current, lien retained, creditor's rights not altered |

**B25B (Official Form 25B) (12/08) – Cont.**                                    11

| Class 2B | *Secured claim of*:<br><br>TOYOTA CREDIT<br><br>Collateral description =<br><br>secured financing of 2007 motor vehicle<br><br>Allowed Secured Amount $21,843.17 (PoC 8) | NO | unimpaired | Monthly Pmt  = $538.23<br><br>Will be kept current, lien retained, creditor's rights not altered |
|---|---|---|---|---|
| Class 2C | *Secured claim of*:<br><br>CRIM<br><br>Collateral description =<br><br>statutory lien for property taxes<br><br>Allowed Secured Amount $1,217.76 (PoC 2) | NO | impaired | Lien retained until paid.<br><br>Payment in full, with 10% interest in one lump sum in the 4th month after the effective date |
| Class 2D | *Secured claim of*:<br>Preferred Home<br>Collateral description =<br>statutory lien for maintenance fees<br>Allowed Secured Amount $486 (PoC 9) | NO | impaired | Lien retained until paid.<br><br>Payment in full, with 10% interest in one lump sum in the 5th month after the effective date |

| Class 2E | *Partially Secured claim of*: Banco Popular arising out of a line of credit extended to debtor's owned corporation, In Business for Team Development, Inc which was personally guaranteed by debtors.<br><br>Collateral description = pre-judgment attachment of funds<br><br>Secured Amount $14,073.16 (funds attached)<br>Whole claim amount $316,474.74 | NO | impaired | Lien to be avoided (preferential transfer)<br><br>Whole claim treated as unsecured Class 3C |
|---|---|---|---|---|
|  |  |  |  |  |

2.  *Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are  required to be placed in classes.  The Code requires that each holder of such a claim receive cash on  the effective date of the Plan equal to the allowed amount of such claim.  However, a class of holders  of such claims may vote to accept different treatment.

This case does not have any claim under §§ 507(a)(1), (4), (5), (6), and  (a)(7) of the Code.

3.  *Classes of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to  priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Classes 3A through 3D, which  contain general unsecured claims against the Debtor:

B25B (Official Form 25B) (12/08) – Cont.                                                                    13

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| **Class 3A** | General Unsecured Class – Except those classified below as Classes 3B,, 3C and 3D | impaired | Will receive dividends totaling 100% of the allowed claim without interest in 120 equal monthly payments.<br><br>Aggregate Monthly Pmt to this class = $1,010<br>Pmts Begin  = 30 days after the effective date<br><br>Estimated percent of   100% claim paid |
| **Class 3B** | Unsecured claim owed to debtor's owned corporation, In Business for Team Development, Inc (Case 10-2207SEK)<br><br>(loans and advances due from officers totaling $266,554)<br><br>This class will receive dividends on its claim to fund the plan of related case (Case 10-2207SEK) in order to pay in full the non-insider claims in said related case.<br><br>The spread of the payments is the same (120 months as that of Class 3A. | impaired | Will receive dividends totaling 100% of the allowed claim without interest in 120 equal monthly payments.<br><br>Aggregate Monthly Pmt to this class = $2,221<br><br>Pmts Begin  = 30 days after the effective date<br><br>Estimated percent of<br><br>claim paid      =   100% |

B25B (Official Form 25B) (12/08) – Cont.                                                          14

| Class 3C | *Partially Secured claim of*:<br><br>Banco Popular<br><br>arising out of a line of credit extended to debtor's owned corporation, In Business for Team Development, Inc which was personally guaranteed by debtors.<br><br>Lien to be avoided (preferential transfer)<br><br>Whole claim for $316,474.74 treated as unsecured Class 3C See more details in description of Class 2E | impaired | Will receive dividends totaling 100% of the allowed claim without interest in 120 equal monthly payments.<br><br>Aggregate Monthly Pmt to this class = $2,637<br><br> Pmts Begin  = 30 days after the effective date<br><br>Estimated percent of<br><br>claim paid      =   100% |
| Class 3D | *Unsecured claim of*: Banco Popular for<br><br>$171,093.44<br><br>arising out of the financing of the farm purchased by  debtor's owned corporation, In Business for Team Development, Inc which was personally guaranteed by debtors.<br><br>This claim is unsecured in this case but secured with a mortgage over the farm in the related case 10-2207SEK | Impaired | Debtors shall remain as guarantors of this claim.<br><br>No dividends are provided in this plan.<br><br>The claim – secured with a real estate mortgage in  related case 10-2207SEK – is to be paid in said case pursuant to the terms agreed to in the mortgage note. |

B25B (Official Form 25B) (12/08) – Cont**.**                                                                    15

    4.  *Classes of Equity Interest Holders*

        Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are equity interest holders.  In a partnership, equity interest holders include both general and limited partners.  In a limited liability company ("LLC"), the equity interest holders are the members.  Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

        In this case, in which debtors are individuals, they both comprise the class of equity interests .  They shall retain the property not otherwise disposed of under the plan, but will receive no dividends.

        D.      **Means of Implementing the Plan**

            1.     *Source of Payments*

        Payments and distributions under the Plan will be funded by the income generated by Debtor in the business described above.

            2.     *Post-confirmation Management*

        The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

                    Debtor shall continue to be managed and operated by  EDMUNDO JIMENEZ & WANDA SOLER.  They shall receive no compensation other than the allowance set forth in the cash projections for their living and personal expenses.

        E.      **Risk Factors**

        The proposed Plan has the following risks:

        As the funding of the plan comes from services rendered under several contracts, the factors that might affect the Debtor's ability to make payments and other distributions required under the Plan are the ordinary risks of EDMUNDO JIMENEZ not been able to perform due to any health problem, or failure to obtain a steady flow of contracts.

        F.      **Executory Contracts and Unexpired Leases**

Debtor shall assume the contract with Autoridad de Acueductos y Alcantarillados executed on March 13, 2010.  Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.  There are no such defaults.

NOTICE TO NON-DEBTOR PARTY TO CONTRACTS TO BE ASSUMED

If you object to the assumption of your unexpired lease or executory contract, the proposed  cure of any defaults, or the adequacy of assurance of performance, you must file and serve your  objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court  has set an earlier time.

All executory contracts and unexpired leases that are not listed herein will be rejected  under the Plan.  Consult your advisor or attorney for more specific information about particular  contracts or leases.

G.      **Tax Consequences of Plan**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax  Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

Debtor anticipates no tax consequences of the Plan or of its confirmation.

IV.      **CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code.   These include the requirements that:  the Plan must be proposed in good faith; at least one impaired  class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to  each creditor and equity interest holder at least as much as the creditor or equity interest holder would  receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the  Plan; and the Plan must be feasible.  These requirements are not the only requirements listed in § 1129,  and they are not the only requirements for confirmation.

A.      **Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the  requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan.  A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity  interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and  (2) impaired.

B25B (Official Form 25B) (12/08) – Cont**.**                                                                 17

        <u>In this case, the Plan Proponent believes that classes 2C, 2D, 2E, 3 A,  3B, 3C,and 3D</u> are impaired and that holders of  claims in each of these classes are therefore entitled to vote to accept or reject the Plan.  The Plan <u>Proponent believes that classes 2 A, and  2B</u> are unimpaired and that holders of claims in each of these  classes, therefore, do not have the right to vote to accept or reject the Plan.

            1.      *What Is an Allowed Claim or an Allowed Equity Interest?*

        Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has  the right to vote on the Plan.  Generally, a claim or equity interest is allowed if either (1) the Debtor  has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed,  contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an  objection has been filed to such proof of claim or equity interest. When a claim or equity interest is  not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote  unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity  interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

            2.      *What Is an Impaired Claim or Impaired Equity Interest?*

        As noted above, the holder of an allowed claim or equity interest has the right to vote only if it  is in a class that is *impaired* under the Plan.  As provided in § 1124 of the Code, a class is considered  impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

            3.      *Who is **Not** Entitled to Vote*

    The holders of the following five types of claims and equity interests are *not* entitled to vote:

        holders of claims and equity interests that have been disallowed by an order of the  Court;

        holders of other claims or equity interests that are not "allowed claims" or "allowed  equity interests" (as discussed above), unless they have been "allowed" for voting  purposes.

        holders of claims or equity interests in unimpaired classes;

        holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the  Code; and

        holders of claims or equity interests in classes that do not receive or retain any value  under the Plan;

        administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation  of the Plan, and to the Adequacy of the Disclosure Statement.***

**B25B (Official Form 25B) (12/08) – Cont.**                                          18

4.    *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

B.    **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section [B.2.].

1.    *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (½) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2.    *Treatment of Non-accepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds non-accepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

As Debtor believes its Plan complies with sec. 1129(b) cram down provisions, if the required acceptances are not obtained, – cram down confirmation will be requested.

***You should consult your own attorney if a cramdown confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

C.    **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as Exhibit E.

As shown in Exhibit E, a Chapter7 liquidation would only yield payments of 5% of the unsecured debts.  The plan provides for 100%.

      D.      **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the  liquidation, or the need for further financial reorganization, of the Debtor or any successor to the  Debtor, unless such liquidation or reorganization is proposed in the Plan.

      1.     *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective  date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.  Tables  showing the amount of cash on hand on the effective date of the Plan, and the sources of that cash are  attached to this disclosure statement as Exhibit F.

      2.     *Ability to Make Future Plan Payments And Operate Without Further  Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to  make the required Plan payments.

The Plan Proponent has provided projected financial information.  Those projections are listed  in Exhibit F.

The Plan Proponent's financial projections ()Exhibits F show that the Debtor will have an aggregate annual  average cash flow, after paying operating expenses and post-confirmation taxes, of over $150,000. The final  Plan payment is expected to be paid on  Nov. 2021.

***You Should Consult with Your Accountant or other Financial Advisor If You Have Any  Questions Pertaining to These Projections.***

V.      **EFFECT OF CONFIRMATION OF PLAN**

      A.      **DISCHARGE OF DEBTOR**

<u>Discharge.</u> Confirmation of the Plan does not discharge any debt provided for in the Plan until  the court grants a discharge on completion of all payments under the Plan, or as otherwise provided in §  1141(d)(5) of the Code.  Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007© of the Federal Rules of Bankruptcy Procedure.

B.    **Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan.   However, the Court may require a new disclosure statement and/or revoting on the Plan.

Upon request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

C.    **Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

/S/  EDMUNDO JIMENEZ, Plan Proponent

/S/ WANDA SOLER, Plan Proponent